O8DDFabP

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        24 Cr. 00481 (AS)

5   JAROL JAEL FABIO,

6                                        Plea
                   Defendant.
7   ------------------------------x

8                                        New York, N.Y.
9                                        August 13, 2024
                                         4:00 p.m.
10

11  Before:

12                   HON. ARUN SUBRAMANIAN,

13                                        U.S. District Judge

14                        APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BENJAMIN GIANFORTE
17       Assistant United States Attorney

18  LISA SCOLARI
         Attorney for Defendant
19

20

21

22

23

24

25
```

O8DDFabP

1             (Case called)

2             THE DEPUTY CLERK:  Can the parties state your

3     appearances, please, starting with the government?

4             MR. GIANFORTI:  Good afternoon, your Honor.  Benjamin

5     Gianforti for the government.

6             THE COURT:  Good afternoon.

7             MS. SCOLARI:  Good afternoon, your Honor.  Lisa

8     Scolari for Mr. Fabio, who is present.

9             THE COURT:  Good afternoon, and good afternoon to you,

10    Mr. Fabio.

11            THE DEFENDANT:  Good afternoon.

12            THE COURT:  All right.  So we're here on the matter of

13    *United States v. Fabio*.

14            Do we have a report from the government, where we are

15    procedurally, and what we need to address today?

16            MR. GIANFORTI:  Your Honor, this is intended to be a

17    change of plea proceeding.

18            THE COURT:  All right.  I understand that there's a

19    waiver of indictment; is that correct?

20            MR. GIANFORTI:  There is indeed.  It was executed

21    earlier today.

22            THE COURT:  Before we get to that, I did want to put

23    on the record one thing.  As Mr. Gianforti had communicated

24    over email to the parties and to the Court, I do know

25    Mr. Gianforti's wife Amber Garrison, who was I think my

O8DDFabP

1  elementary school classmate, and I met Mr. Gianforti once in

2  Brooklyn I think about a year ago where our kids got together.

3  Mr. Gianforti helpfully made that disclosure.  I wanted to make

4  sure that was on the record.

5       Ms. Scolari, if you have any questions or concerns

6  along those lines --

7       MS. SCOLARI:  Your Honor, I appreciate it.  I know the

8  Court would want to avoid any appearance of impropriety, so is

9  it fair to assume that there will not be any further social

10  interaction between the Court and Mr. Gianforti while this case

11  is pending?

12       THE COURT:  That is correct.

13       MS. SCOLARI:  Thank you.

14       THE COURT:  With that, we will proceed.

15       So, Mr. Gianforti, I understand the order of

16  operations here is for a waiver of indictment, to then arraign

17  Mr. Fabio on the information, and then to enter and go through

18  the plea colloquy; is that correct?

19       MR. GIANFORTI:  That's correct, your Honor.  Thank

20  you.

21       THE COURT:  Okay.  Well, the way I'm going to do this,

22  and please let me know if you have any objections, I'm going to

23  go ahead and swear Mr. Fabio in, and then we'll go through the

24  appropriate steps.

25       Ms. Scolari, any issues with that?

O8DDFabP

| | |
|---|---|
| 1 | MS. SCOLARI:  No.  That's fine, your Honor. |
| 2 | THE COURT:  Okay.  Mr. Hernandez, could you swear in |
| 3 | Mr. Fabio? |
| 4 | THE DEPUTY CLERK:  Yes, your Honor. |
| 5 | (Defendant sworn.) |
| 6 | THE DEPUTY CLERK:  Thank you.  You may be seated. |
| 7 | THE COURT:  Okay.  Mr. Fabio, you're now under oath, |
| 8 | which means that if you answer any of my questions falsely, you |
| 9 | may be prosecuted for the separate crime of perjury. |
| 10 | Do you understand that? |
| 11 | THE DEFENDANT:  Understood, your Honor. |
| 12 | THE COURT:  So I'm going to ask you some questions |
| 13 | just to get started about your competence just to make sure you |
| 14 | understand what's going on, and then we can proceed with the |
| 15 | rest of the things we're planning to do today.  Okay? |
| 16 | THE DEFENDANT:  All right. |
| 17 | THE COURT:  What is your full name? |
| 18 | THE DEFENDANT:  Jarol Jael Fabio. |
| 19 | THE COURT:  How old are you? |
| 20 | THE DEFENDANT:  Thirty-seven. |
| 21 | THE COURT:  How far did you go in school? |
| 22 | THE DEFENDANT:  Undergrad. |
| 23 | THE COURT:  Where at? |
| 24 | THE DEFENDANT:  FIT, Fashion Institute of Technology. |
| 25 | THE COURT:  Have you ever been treated or hospitalized |

O8DDFabP

```
1    for any kind of mental illness?

2              THE DEFENDANT:  No.

3              THE COURT:  Are you now or have you recently been --

4              MS. SCOLARI:  I'm sorry.  If I could have a moment?

5              THE DEFENDANT:  Oh, treated.  I focused on the

6    hospitalization portion of it.

7              I am currently taking Lexapro.  It's an antianxiety,

8    antidepression, and I've been going to therapy for over ten

9    years now, currently working with my current therapist.

10             THE COURT:  To treat depression?

11             THE DEFENDANT:  Yes.  Depression, anxiety, and just

12   general life.

13             THE COURT:  Life stuff?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Is there anything in that depression,

16   anxiety, or life stuff that would make it hard for you to

17   understand what's happening in the courtroom today?

18             THE DEFENDANT:  No, your Honor.

19             THE COURT:  Has that made it difficult for you to

20   understand what's going on in this criminal case?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  So you feel like you're fully able to

23   understand everything that's happening and all the advice that

24   you've been getting from Ms. Scolari?

25             THE DEFENDANT:  Whatever I can't understand, I always
```

O8DDFabP

1    consult with her and she's able to clarify for me.

2              THE COURT:  Nothing in the treatment, the medication,

3    the Lexapro, that's not affecting how you think about this

4    criminal case in a way that might make it harder for you to

5    understand what's going on?

6              THE DEFENDANT:  It's not affecting me, your Honor.

7              THE COURT:  It doesn't affect you in terms of this

8    case.  Okay.  And I apologize for that.  I asked you a compound

9    question which lawyers are not supposed to do.  That was my

10   fault for asking a question that's not clear.

11             All right.  Now, you mentioned that you were under

12   treatment, and other than the treatment for the depression and

13   anxiety and being prescribed Lexapro, anything else in terms of

14   treatment that I should be aware of that might affect your

15   mental state, the way you're feeling, that sort of thing?

16             THE DEFENDANT:  No, your Honor.

17             THE COURT:  All right.  Have you ever been treated --

18   well, I'm going to strike the compound question.

19             Have you ever been treated for any type of addiction,

20   including drug or alcohol addiction?

21             THE DEFENDANT:  I have not, your Honor.

22             THE COURT:  Have you ever been hospitalized for

23   anything like that?

24             THE DEFENDANT:  No.

25             THE COURT:  Any kind of addiction issues?

O8DDFabP

1              THE DEFENDANT:  No.

2              THE COURT:  Have you ever taken any drugs, medicine,

3    pills, or alcohol, other than the Lexapro that you mentioned in

4    the past two days?

5              THE DEFENDANT:  No, I have not.

6              THE COURT:  Now, as to the Lexapro, I've sort of asked

7    you this before, but does the Lexapro kind of change your mood,

8    make it hard to really understand what's going on, or make you

9    groggy or anything like that?

10             THE DEFENDANT:  No, it doesn't.

11             THE COURT:  So you feel your mind is clear today?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  All right.  So let's proceed with the

14   waiver of indictment.

15             Now, do we have a waiver of indictment form?

16             MS. SCOLARI:  Yes, but it has yet to be signed.  I

17   understand the Court's preference is to sign it before your

18   Honor.

19             THE COURT:  Yes.

20             MS. SCOLARI:  Shall we do that now?

21             THE COURT:  Let's do it right now.

22             MS. SCOLARI:  I'm signing it to witness, which I

23   should not sign it -- sorry.  How many copies would you like,

24   Mr. Hernandez?

25             THE DEPUTY CLERK:  The Court only needs one signed

O8DDFabP

1   copy.  I can make a copy for the parties if you need it.

2             MR. GIANFORTI:  We have a couple extra.

3             MS. SCOLARI:  No, we're all set.

4             Well, let me do the other form, because I started to

5   sign where the witness signed, and I should not have.

6             MR. GIANFORTI:  I signed that one, too, right?

7             THE DEPUTY CLERK:  Yes.

8             MR. GIANFORTI:  Okay.  Very good.

9             MS. SCOLARI:  No.  This is not the one you signed.

10  The waiver --

11            THE DEPUTY CLERK:  Oh, I apologize.

12            MR. GIANFORTI:  Sorry.  It's my fault.

13            THE DEPUTY CLERK:  Your Honor, let the record reflect

14  that I have signed the waiver of indictment as the witness.

15            THE COURT:  Okay.  I have before me a waiver of

16  indictment -- excuse me, Ms. Scolari.

17            MS. SCOLARI:  Excuse me.

18            THE COURT:  I didn't want to interrupt if you were

19  having a conversation with Mr. Fabio.

20            MS. SCOLARI:  We're all set.

21            THE COURT:  All right.  Now, I have before me a waiver

22  of indictment form dated August 13, 2024.

23            And, Mr. Fabio, did you sign this form?

24            MS. SCOLARI:  I did, your Honor.

25            THE COURT:  Is it your signature that appears here?

O8DDFabP

1                    THE DEFENDANT:  Yes, your Honor.

2                    THE COURT:  Before you signed this waiver of

3      indictment, did you discuss it with Ms. Scolari?

4                    THE DEFENDANT:  I did.

5                    THE COURT:  Did she explain it to you?

6                    THE DEFENDANT:  She did, your Honor.

7                    THE COURT:  Do you understand you're under no

8      obligation to waive indictment?

9                    THE DEFENDANT:  I do.

10                    THE COURT:  Do you understand that if you do not waive

11     indictment and the government wants to prosecute you, it would

12     have to present the case to a grand jury, which may or may not

13     indict you?

14                    THE DEFENDANT:  Understood.

15                    THE COURT:  Do you understand that by waiving

16     indictment, you are giving up your right to have this case

17     presented to a grand jury?

18                    THE DEFENDANT:  Yes.

19                    THE COURT:  Do you understand what a grand jury is?

20                    THE DEFENDANT:  Yes.

21                    THE COURT:  Okay.  I'm going to tell you anyway.  It's

22     a body composed of 23 people, of which 16 must be present.  You

23     cannot be charged unless 12 vote for indictment based on

24     probable cause.  Okay?

25                    THE DEFENDANT:  Okay.

O8DDFabP

1          THE COURT:  You understand you're giving up that right

2     by waiving indictment?

3          THE DEFENDANT:  I do.

4          THE COURT:  Okay.  Do either counsel know of any

5     reason I should not find Mr. Fabio has knowingly and

6     voluntarily waived his right to be indicted by a grand jury?

7          MR. GIANFORTI:  No, your Honor.

8          MS. SCOLARI:  I do not, your Honor.

9          THE COURT:  Okay.  I find Mr. Fabio has knowingly and

10    voluntarily waived his right to be indicted by a grand jury,

11    and I authorize the filing of the information.  We have the

12    waiver of indictment form, which is signed.  I'll just note it

13    as Court Exhibit One.

14         All right.  So the next thing we're going to take care

15    of is before, Mr. Fabio, we get into your -- the plea agreement

16    and the discussions your counsel and you have had with the

17    government, we need to have you arraigned on the information.

18    Okay?  So I'm going to ask you a few questions now.

19         Have you seen a copy of the information in this case?

20         THE DEFENDANT:  I have, your Honor.

21         THE COURT:  Have you discussed it with Ms. Scolari?

22         THE DEFENDANT:  I have.

23         THE COURT:  Now, do you want me to read the

24    information out loud or summarize it for you or do you waive

25    its public reading?

O8DDFabP

1          THE DEFENDANT:  I waive its public reading.

2          Thank you, your Honor.

3          THE COURT:  Do you understand the charge against you?

4          THE DEFENDANT:  I do.

5          THE COURT:  How do you plead to the charge in the

6    information, guilty or not guilty?

7          MS. SCOLARI:  I've explained it's kind of an oxymoron,

8    because he's now going to plead not guilty, and, in a minute,

9    he's going to plead guilty.

10          THE COURT:  Okay.  So, Mr. Fabio, you understand the

11   sequence here, before we get into the plea agreement where you

12   may, after we've had our discussion, decide that you would like

13   to plead guilty, at this point in time, before we do any of

14   that, how do you plead to the charge in the information?

15          THE DEFENDANT:  Not guilty.

16          THE COURT:  All right.  Now, Mr. Gianforti, do we need

17   to have a 5(f) order in this case?  Is this Mr. Fabio's initial

18   appearance?

19          MR. GIANFORTI:  I think, in an abundance of caution,

20   it's probably worth doing it.  I've done it in every other case

21   that's been circulating around this case.

22          THE COURT:  Okay.  So, Mr. Fabio, I understand, again,

23   I think your counsel called this an oxymoron, but I understand

24   the next thing we're going to be talking about is a plea of

25   guilty.  But at this point in the case it is your right to

O8DDFabP

1   proceed on the information and to proceed to trial if you would

2   like to.

3          So, in that regard, there's a rule of criminal

4   procedure that requires me to tell the government that if they

5   have any material that's so-called *Brady* material, that might

6   be something that you and your counsel would want to see in the

7   discovery in this case, they have to turn it over.  Okay?

8          So I'm going to give them that instruction.  If you

9   have any questions on this, let me know, but I wanted to let

10  you know, because this is going to sound like a lot of legalese

11  but it's important I do it.

12          THE DEFENDANT:  Thank you.

13          THE COURT:  Let me take a moment to comply with Rule

14  5(f) of the Federal Rules of Criminal Procedure to remind the

15  government of its obligation under *Brady v. Maryland* and its

16  progeny to disclose to the defense all information, whether

17  admissible or not, that is favorable to the defendant, material

18  either to guilt or to punishment, and known to the prosecution.

19          The prosecution must make good faith efforts to

20  disclose such information to the defense as soon as reasonably

21  possible.  Failure to do so may result in a number of

22  consequences, including a continuance, sanctions, dismissal, or

23  a vacatur of any conviction.  I'll enter a written order

24  describing more fully these obligations and the possible

25  consequences of violating them and direct the government to

O8DDFabP

1    review and comply with that order.

2            Mr. Gianforti, do you understand your obligations

3    under Rule 5(f) and *Brady v. Maryland*, and will you fulfill

4    them?

5            MR. GIANFORTI:  I will, your Honor, and I do.

6            THE COURT:  Okay.  Let's proceed.

7            Ms. Scolari, does your client have an application

8    regarding a plea as to charge in the information?

9            MS. SCOLARI:  Yes, your Honor.  He wishes to withdraw

10   his just previous plea of not guilty and enter a plea of guilty

11   to the sole count in the superseding indictment.

12           THE COURT:  Mr. Fabio, I've been informed you wish to

13   plead guilty to the sole count in the superseding information,

14   which is operating an unlicensed money transmission business

15   under 18, U.S.C., section 1960(n)(2).

16           Is that correct?

17           THE DEFENDANT:  That is correct, your Honor.

18           THE COURT:  Mr. Gianforti, just a technical question.

19   The plea agreement solely refers to section 6660.  The

20   information refers to section 1960(n)(2).  I can't understand

21   why that would be material.  However, I did note that there was

22   that discrepancy between the agreement and information.

23           Is that meaningful in any way that we need to take

24   into account?

25           MR. GIANFORTI:  I don't think so, your Honor.  This is

O8DDFabP

1  -- I mean, section 2 is aiding and abetting.  He was -- there

2  was no co-conspirator or anything in this particular case, so I

3  think it's just an oversight that has no particular materiality

4  here.

5          THE COURT:  That was what I understood.  I just wanted

6  to make sure that I was understanding that correctly.

7          All right.  Now, before I accept your guilty plea, I'm

8  going to ask you, Mr. Fabio, certain questions so I can

9  establish to my satisfaction that you wish to plead guilty

10 because you are guilty and not for some other reason, and also

11 to establish that you know what you will be giving up by

12 pleading guilty.

13         If you do not understand any of my questions or you

14 want to consult with Ms. Scolari at any time for any reason,

15 just let me know and I'll give you as much time as you need to

16 do that, because it is essential in order to have a valid plea

17 that you understand each question before you answer.

18         Now, you remember I asked you some questions about

19 your competence and how you were feeling and the Lexapro and

20 all that stuff, so just to be really sure, do you understand

21 what's happening in the courtroom today?

22         THE DEFENDANT:  I do, your Honor.

23         THE COURT:  Do you feel like any of the treatment or

24 for any reason you are not in the right state of mind to

25 understand what you'd be giving up by pleading guilty?

O8DDFabP

1              THE DEFENDANT:  I understand.

2              THE COURT:  You understand.

3              Ms. Scolari, have you discussed this matter with

4    Mr. Fabio?

5              MS. SCOLARI:  Yes, I have, your Honor.

6              THE COURT:  Does he understand the rights he would be

7    waiving by pleading guilty?

8              MS. SCOLARI:  I believe he does, yes.

9              THE COURT:  Is he capable of understanding the nature

10   of the proceedings?

11             MS. SCOLARI:  Yes, he is.

12             THE COURT:  Do either counsel have any doubt as to Mr.

13   Fabio's competence to plead at this time?

14             MR. GIANFORTI:  No.

15             MS. SCOLARI:  No, your Honor.  Thank you.

16             THE COURT:  On the basis of Mr. Fabio's responses to

17   my questions at the beginning of this proceeding, my

18   observations of his demeanor here in court and the

19   representations of counsel, I find that Mr. Fabio is fully

20   competent to enter an informed plea of guilty at this time.

21             Now, I'm going to ask you a few questions, and they're

22   going to sound repetitive, but as you might appreciate, this is

23   such an important part of this proceeding that it's better to

24   be over-inclusive as opposed to under-inclusive, so I apologize

25   in advance if I'm asking you multiple things multiple times

O8DDFabP

1    over.

2            Do you feel you have had enough of a chance to discuss

3    with Ms. Scolari the charge that you intend to plead guilty to

4    and any possible defenses to that charge?

5            THE DEFENDANT:  I do, your Honor.

6            THE COURT:  Has Ms. Scolari explained to you the

7    consequences of entering a plea of guilty?

8            THE DEFENDANT:  She has, your Honor.

9            THE COURT:  Are you satisfied with your lawyer's

10   representation?

11           THE DEFENDANT:  I am.

12           THE COURT:  You understand that you're still under

13   oath, and so anything you say over the course of this

14   proceeding you have to tell me the truth and the whole truth,

15   otherwise you could be subject to a charge of perjury?

16           Do you understand that?

17           THE DEFENDANT:  I understand, your Honor.

18           THE COURT:  All right.  Now, Mr. Fabio, I'm going to

19   explain some rights that you have.  These are rights that

20   you'll be giving up if you enter a guilty plea.  Please listen

21   carefully to what I'm about to say, and if you do not

22   understand something, stop me and your lawyer or I will explain

23   the matter more fully.

24           Under the Constitution and the laws of the United

25   States, you have a right to plead not guilty to the charge in

O8DDFabP

1    the information.

2              Do you understand that?

3              THE DEFENDANT:  I do.

4              THE COURT:  If you did plead not guilty, you would be

5    entitled to a speedy and public trial by a jury on the charge

6    contained in the information.

7              Do you understand that?

8              THE DEFENDANT:  I do.

9              THE COURT:  At a trial, you would be presumed to be

10   innocent, and you would not have to prove that you were

11   innocent.  Instead, the government would be required to prove

12   you guilty by competent evidence beyond a reasonable doubt

13   before the jury could find you guilty.

14             Do you understand that?

15             THE DEFENDANT:  I do, your Honor.

16             THE COURT:  In order to find you guilty, a jury of 12

17   people would have to agree unanimously that you were guilty.

18             Do you understand that?

19             THE DEFENDANT:  I do, your Honor.

20             THE COURT:  At that trial and at every stage of your

21   case, you would be entitled to be represented by a lawyer, and

22   if you could not afford a lawyer, one would be appointed at

23   public expense, free of cost, to represent you.

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

O8DDFabP

1          THE COURT:  During a trial, the witnesses for the

2    government would have to come to court and testify in your

3    presence.  Your lawyer could cross-examine the witnesses for

4    the government, object to evidence offered by the government,

5    and offer evidence on your own behalf if you so desire, and you

6    would have the right to have subpoenas issued or other process

7    used to compel witnesses to testify in your defense.

8          Do you understand that?

9          THE DEFENDANT:  I do.

10          THE COURT:  At a trial, although you would have the

11    right to testify if you chose to do so, you would also have the

12    right not to testify, and if you decided not to testify, no

13    one, including the jury, could draw any inference or suggestion

14    of guilt from the fact that you did not testify.

15          Do you understand that?

16          THE DEFENDANT:  I do, your Honor.

17          THE COURT:  Before trial, you would have an

18    opportunity, if you have not waived it, to seek suppression of

19    some or all of the evidence the government may use against you

20    at trial on the ground that your Constitutional rights were

21    violated.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  There's no basis for any kind of waiver of

25    any suppression rights at this juncture, Ms. Scolari, right?

O8DDFabP

1          MS. SCOLARI:  No, your Honor.

2          THE COURT:  So just to be clear, if you wanted to, you

3     could try to suppress the government's evidence that they might

4     use against you at trial on the ground that your rights were

5     violated.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  You understand you'll be giving up that

9     right if you plead guilty?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  All right.  Before trial, the government

12     is required to produce discovery materials to you under Federal

13     Rule of Criminal Procedure 16, and would further be required to

14     produce material pursuant to *Brady v. Maryland* and Federal Rule

15     of Criminal Procedure 5(f), and impeachment material pursuant

16     to *Giglio v. United States*, and so-called Jencks Act material.

17          Do you have any questions about what that material

18     would be that you'd be giving up the right to see if you plead

19     guilty?

20          THE DEFENDANT:  No questions, your Honor, about that.

21          THE COURT:  Now, if you were convicted at a trial, you

22     would have the right to appeal that verdict and any pretrial

23     ruling that I have made.

24          Do you understand that?

25          THE DEFENDANT:  Yes, your Honor.

O8DDFabP

| | |
|---|---|
| 1 | THE COURT:  If you plead guilty, you'll have to give |
| 2 | up your right not to incriminate yourself, because I may ask |
| 3 | you questions about what you did in order to satisfy myself |
| 4 | that you are guilty as charged, and you will have to admit and |
| 5 | acknowledge your guilt. |
| 6 | Do you understand that? |
| 7 | THE DEFENDANT:  Yes, your Honor. |
| 8 | THE COURT:  If you plead guilty and if I accept your |
| 9 | plea, you'll give up your right to a trial and the other rights |
| 10 | I have just discussed other than the right to a lawyer, which |
| 11 | you have regardless of whether or not you plead guilty.  But |
| 12 | there will be no trial and I will enter a judgment of guilty |
| 13 | and sentence you on the basis of your plea after I have |
| 14 | considered a presentence report and whatever submissions I get |
| 15 | from your lawyer and the government. |
| 16 | There will be no appeal with respect to whether the |
| 17 | government could use the evidence it has against you or with |
| 18 | respect to whether you did or did not commit this crime. |
| 19 | That was a lot, but do you understand that? |
| 20 | THE DEFENDANT:  Yes, your Honor. |
| 21 | THE COURT:  All right.  Now, even now as you're |
| 22 | entering this plea, you have a right to change your mind and |
| 23 | plead not guilty and go to trial on the charge contained in the |
| 24 | information. |
| 25 | Do you understand that? |

O8DDFabP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand each and every one of

3     the rights that I've explained to you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Mr. Fabio, are you willing to give up your

6     right to a trial and the other rights I've just discussed with

7     you?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  All right.  Now we'll talk a little bit

10    about the nature of the charge and potential consequences.

11         Mr. Fabio, you understand your plea relates to the

12    operation of an unlicensed money transmission business in

13    violation of 18, U.S.C., section 1960(n)(2)?

14         Do you understand that?

15         THE DEFENDANT:  I do, your Honor.

16         THE COURT:  All right.  Mr. Gianforti, would you

17    please state the elements of the offense in question?

18         MR. GIANFORTI:  Yes, your Honor.

19         In order to sustain its burden of proof with respect

20    to Count One, the information, the government would have to

21    prove the following elements beyond a reasonable doubt:

22         First, that the business in question was an unlicensed

23    money transmitting business;

24         Second, that the business was controlled, conducted,

25    managed, supervised, directed, or owned with knowledge that it

O8DDFabP

1   was used as a unlicensed money transmitting business;

2              And, third, that the operation of the unlicensed money

3   transmission business affected interstate or foreign commerce.

4              And the government would have to prove venue to a

5   preponderance of the evidence.

6              THE COURT:  All right.  Mr. Fabio, do you understand

7   that if you were to go to trial, the government would have to

8   prove all of those elements beyond a reasonable doubt and

9   venue, which you just heard Mr. Gianforti mention that they

10  would have to prove by a preponderance of the evidence?

11             Do you understand that?

12             THE DEFENDANT:  I understand, your Honor.

13             THE COURT:  Now I'm going to tell you the maximum

14  possible penalty for the crime that is the subject of the

15  information.  The maximum means the most that could possibly be

16  imposed.  It does not mean that it is what you will necessarily

17  receive.  But you have to understand that by pleading guilty,

18  you are exposing yourself to the possibility of receiving any

19  combination of punishments up to the maximum that I'm about to

20  describe.

21             Do you understand that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  All right.  First I'm going to tell you

24  about possible restrictions on your liberty.  The maximum term

25  of imprisonment for this crime is five years, and that could be

O8DDFabP

1    followed by a maximum term of supervised release of three

2    years.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Now, supervised release means you'll be

6    subject to supervision by the probation department.  There will

7    be rules of supervised release that you will have to follow,

8    and if you violate those rules, you can be returned to prison

9    without a jury trial to serve additional time, with no credit

10   for time you served in prison as a result of your sentence and

11   no credit for time served on post-release supervision.

12             Do you understand that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  You should understand there is no parole

15   in the federal system, and if you are sentenced to prison, you

16   will not be released early on parole.  There is limited credit

17   for good behavior, but you have to serve at least 85 percent of

18   the time that you are sentenced to.

19             Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  In addition to these restrictions on your

22   liberty, the maximum possible punishment also includes some

23   financial penalties:  The maximum allowable fine, the greater

24   of $250,000 or twice the gross pecuniary gain derived from the

25   offense or twice the gross pecuniary loss to persons other than

O8DDFabP

1   you resulting from the offense.

2            Do you understand that?

3            THE DEFENDANT:  That one might need a little more

4   extrapolation on it, please.

5            THE COURT:  Okay.  So there's a fine associated with

6   this crime.

7            Do you understand that?

8            THE DEFENDANT:  Yes.

9            THE COURT:  The maximum fine is the greatest of one of

10  these, okay?  The greatest of $250,000, twice the gross

11  pecuniary gain derived from the offense, or twice the gross

12  pecuniary loss to persons other than you resulting from the

13  offense.  So you've got $250,000, you've got twice the gross

14  pecuniary gain, like the monetary gain from the offense, and

15  then twice the gross pecuniary -- the kind of monetary loss to

16  people other than you from the offense.

17           THE DEFENDANT:  Understood.

18           THE COURT:  That's the maximum possible fine.

19           You understand that?

20           THE DEFENDANT:  Understood.  Thank you.

21           THE COURT:  Okay.  Any further -- you want to talk to

22  Ms. Scolari about that or anything?

23           THE DEFENDANT:  No.

24           THE COURT:  Okay.  Now, in addition, I can order

25  restitution to any person or entity injured as a result of your

O8DDFabP

1    criminal conduct.

2              Mr. Gianforti, is there any basis for restitution in

3    this case or any attempt --

4              MR. GIANFORTI:  There's not.

5              THE COURT:  There is not.  Okay.

6              There is a forfeiture, which we'll address, and I

7    understand the parties have an agreement relating to

8    forfeiture.

9              Is that right, Mr. Gianforti?

10             MR. GIANFORTI:  Yes, your Honor.

11             THE COURT:  All right.  We will address that when we

12    get to the plea.

13             There is also a mandatory special assessment of $100.

14             Do you understand that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  All right.  Do you understand that these

17    are the maximum possible penalties?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Are you a United States citizen?

20             THE DEFENDANT:  I am.

21             THE COURT:  Do you understand that, as a result of

22    your guilty plea, you may lose certain valuable civil rights to

23    the extent that you have them or could otherwise obtain them

24    now, such as the right to vote, the right to hold public

25    office, the right to serve on a jury, and the right to possess

O8DDFabP

1    any kind of firearm?

2              THE DEFENDANT:  Understood, your Honor.

3              THE COURT:  Now, are there any other cases or

4    sentences here, Mr. Gianforti, related to Mr. Fabio?

5              MR. GIANFORTI:  There are, your Honor.  There are five

6    defendants that were originally charged, five different flight

7    attendants engaged in the same conduct.  Those have all been --

8    with the exception of one, they've all been wheeled to

9    different district judges.  No one's sentenced.

10             THE COURT:  But Mr. Fabio is not a defendant in these

11   other cases?

12             MR. GIANFORTI:  He's not, no.

13             THE COURT:  All right.  Mr. Fabio, are you serving any

14   other sentence, state or federal, or being prosecuted in state

15   court for any crime?

16             THE DEFENDANT:  No, your Honor.

17             THE COURT:  Okay.  Are you being prosecuted in federal

18   court for any crime other than this case?

19             THE DEFENDANT:  No, your Honor.

20             THE COURT:  Now I'm just going to tell you this

21   anyway, but if you were, you should understand that your state

22   and federal sentences -- if that situation came up, could be

23   consecutive to any sentence imposed in this case, could be

24   added onto any sentence served.  I'm just telling you that, but

25   it appears that that's not an issue for you.  But I wanted to

O8DDFabP

1    let you know so you are aware of it in case there's something

2    you forgot or that's something that just didn't come up.  Okay?

3              THE DEFENDANT:  Thank you.

4              THE COURT:  Do you understand, if your lawyer or

5    anyone else has attempted to predict what your sentence will

6    be, that their prediction could be wrong?  No one, not your

7    lawyer, not the government's lawyer, no one can give you any

8    assurance of what your sentence will be, since I am going to

9    decide your sentence and I am not going to do that now.  I am

10   going to wait until I receive a presentence report -- you

11   probably talked to your lawyer about this -- prepared by the

12   probation department; do my own independent calculation of the

13   guidelines range; consider any possible departures from it; and

14   also determine what a reasonable sentence is for you based on

15   the sentencing factors contained in that statute, 18, U.S.C.,

16   3553(a).  It has a long list of things that I need to consider

17   when I'm sentencing someone.

18             Do you understand all that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Okay.  So, bottom line, even if

21   Ms. Scolari, even if Mr. Gianforti may expect what the sentence

22   would be, that doesn't matter, because I'm going to be

23   sentencing you based on the legal factors that I have to apply.

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

O8DDFabP

1          THE COURT:  All right.  I'll say it one more time just

2    to make sure it's clear.  Even if your sentence is different

3    from what lawyer or anyone else has told you it might be, even

4    if it's from what you might expect or from what is contained in

5    the written plea agreement, which we'll talk about in a second,

6    you will still be bound by your guilty plea and will not be

7    allowed to withdraw your plea of guilty.

8          Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  All right.  Now, I understand there is a

11   written plea of guilty entered between you and your lawyer and

12   the lawyer for the government; is that right?

13         MS. SCOLARI:  A plea agreement, your Honor.

14         THE COURT:  Did I say -- I'm sorry if I misspoke.  A

15   written plea agreement.  Yes.

16         Now, do we have a written, executed copy of that?

17         MR. GIANFORTI:  We do, your Honor.  It's with your

18   deputy.

19         THE COURT:  Now, Mr. Gianforti, I understand that the

20   previous plea agreement that the Court had is different from

21   this version, and the only difference is in the amount of

22   forfeiture; is that correct?

23         MR. GIANFORTI:  That's right.

24         THE COURT:  Okay.  So I have before me a plea

25   agreement dated August 13, 2024.

O8DDFabP

```
 1              Mr. Fabio, did you sign this agreement on the last
 2   page?
 3              THE DEFENDANT:  I did, your Honor.
 4              THE COURT:  Did you do that in the presence of your
 5   lawyer?
 6              THE DEFENDANT:  I did, your Honor.
 7              THE COURT:  Did you read this agreement before you
 8   signed it?
 9              THE DEFENDANT:  I did, your Honor.  Thank you.
10              THE COURT:  Did you discuss this agreement with your
11   lawyer before you signed it?
12              THE DEFENDANT:  I did.
13              THE COURT:  Did you fully understand the agreement
14   before you signed it?
15              THE DEFENDANT:  Yes, your Honor.
16              THE COURT:  One of the features or your agreement with
17   the government is you have agreed on the guideline range that
18   applies in this case.
19              Do you understand that?
20              THE DEFENDANT:  I do.
21              THE COURT:  That agreement is binding on you and
22   binding on the government, but not binding on me.
23              Do you understand that?
24              Let's make sure you understand that.  You get it?  You
25   got me?
```

O8DDFabP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  I have my own obligation to

3   determine the correct guidelines range and what the appropriate

4   sentence is in your case.  I'm not saying I will come up with

5   any range different from the one you agreed to with the

6   government, but if I do, then I will not let you withdraw your

7   plea even if the range I determined is higher than the one to

8   which you agree.

9          Do you understand that?

10          THE DEFENDANT:  I do, your Honor.

11          THE COURT:  Another feature of your agreement is that

12   you admit to a forfeiture allegation in the information and

13   agree to forfeit to the United States the proceedings traceable

14   to the offense; is that correct?

15          THE DEFENDANT:  That's correct.

16          THE COURT:  You understand what that means?

17          THE DEFENDANT:  Yes.

18          THE COURT:  At this time, do I have a copy of the

19   forfeiture order?

20          MR. GIANFORTI:  You do, your Honor.

21          THE COURT:  All right.  I have in front of me a

22   consent preliminary order of forfeiture/money judgment dated

23   August 13, 2024.

24          Mr. Fabio, you understand, consistent with this order

25   and judgment, you would be forfeiting to the government a sum

O8DDFabP

1   of money equal to 20 -- $2,100 in United States currency

2   representing property involved in the offense charged in Count

3   One of the information?

4           MR. GIANFORTI:  Your Honor, it should be $2,100 I

5   think.

6           THE COURT:  Sorry.  Did I again misspeak?  It's late

7   in the day.  Let me say that again.

8           You understand, Mr. Fabio, you would be forfeiting a

9   sum of money equal to $2,100 in United States currency,

10  representing property involved in the offense charged in Count

11  One of the information?

12          THE DEFENDANT:  I do, your Honor.

13          THE COURT:  Okay.  Mr. Gianforti, are there any other

14  principal terms of the order and judgment that we would want to

15  make sure that Mr. Fabio is aware of?

16          MR. GIANFORTI:  No, not with respect to the forfeiture

17  order.

18          THE COURT:  All right.  Just for the record, I'll just

19  note the plea agreement as Court Exhibit Two and the

20  preliminary order and judgment will be entered at the

21  conclusion of these proceedings.

22          Now, does the written plea agreement, Mr. Fabio,

23  constitute your complete and total understanding of the entire

24  agreement between you and the government?

25          THE DEFENDANT:  Yes, your Honor.

O8DDFabP

1          THE COURT:  Has anything been left out?  Do you feel

2     like there's something you talked about but it's not in the

3     writing in the actual agreement?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Other than what is written in the

6     agreement, has anyone made any promise or offered you any

7     inducement to plead guilty or to sign the agreement?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  Has anyone threatened you or forced you to

10    plead guilty or to sign the plea agreement?

11         THE DEFENDANT:  No, your Honor.

12         THE COURT:  Has anyone made a promise to you as to

13    what your sentence will be?

14         THE DEFENDANT:  No.

15         THE COURT:  Okay.  Now I'm going to ask you about the

16    factual basis for your guilty plea.  I realize there's one

17    thing that I neglected to do, which I will do this.

18         One of the features of your plea agreement, which I

19    wanted to make sure to review with you, is you understand that

20    there is a waiver on your part of a right to appeal under

21    certain circumstances.

22         Do you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Okay.  You understand that you are giving

25    up the right to appeal any sentence, which is within or below

O8DDFabP

1   the stipulated guidelines range of 18 to 24 months of

2   imprisonment.

3          Do you understand that?

4          THE DEFENDANT:  I do, your Honor.

5          THE COURT:  Okay.  You further agree not to appeal or

6   bring a collateral challenge to any term of supervised release

7   that is less than or equal to the statutory maximum or any

8   condition of supervised release imposed by the Court for which

9   you had notice, including from a recommendation by the

10  probation office in the presentence report, and an opportunity

11  to object.

12         Do you understand that?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Okay.  When I say appeal, that would

15  include what's called a collateral challenge under a statute

16  called 28, U.S.C., 2255.  So it's not just kind of the appeal

17  from the case.  It also includes this other type of way of

18  challenging it.  Both of those you're going to be prevented

19  from doing if your sentence is below 18 -- within or below 18

20  to 24 months of imprisonment and at or below the statutory

21  maximum for supervised release.

22         Do you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Now, you also agree not to appeal or bring

25  any collateral challenge of any forfeiture amount that is less

O8DDFabP

1    than or equal to 20 -- $2,100 or any fine that is less than or

2    equal to $75,000.

3            Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  You also agree not to appeal or bring a

6    collateral challenge to any special assessment that is less

7    than or equal to $100.

8            Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Okay.  Now I'm going to ask you some

11   questions about the factual basis for your guilty plea, and

12   before I do so, just because of my referring to $2,100 as

13   $21,000 incorrectly before, Mr. Gianforti, is there anything

14   else that we need to review with respect to the plea agreement?

15           MR. GIANFORTI:  No, your Honor.

16           THE COURT:  Ms. Scolari, you agree?

17           MS. SCOLARI:  Yes, I agree.

18           THE COURT:  Okay.  So, Mr. Fabio, now tell me in your

19   own words -- I'm going to ask you about the offense and just

20   why you are pleading guilty just to make sure that you are

21   pleading guilty because you are, in fact, guilty.  So could you

22   tell me in your own words what you did that makes you believe

23   that you are guilty of the charge in the information?

24           THE DEFENDANT:  Yes, your Honor.  Between the year

25   2017 and 2023, I operated an unlicensed money transfer

O8DDFabP

| | |
|---|---|
| 1 | business.  I transported cash from New York to the Dominican |
| 2 | Republic on May 17th, 2023, for a fee.  I did not have a |
| 3 | license -- so I transported cash from New York to the Dominican |
| 4 | Republic on May 17, 2023, for a fee. |
| 5 | THE COURT:  Did you say for a fee? |
| 6 | THE DEFENDANT:  For a fee. |
| 7 | THE COURT:  Ms. Scolari, could you move that |
| 8 | microphone to put it in front of Mr. Fabio? |
| 9 | THE DEFENDANT:  Hopefully this will be better.  My |
| 10 | apologies. |
| 11 | THE COURT:  That's much better. |
| 12 | THE DEFENDANT:  I did not have a license to operate a |
| 13 | money transfer business.  I acknowledge that it was wrong and |
| 14 | illegal for me to transport the cash. |
| 15 | THE COURT:  I understand you were reading from a |
| 16 | statement.  Is that a statement that your counsel prepared, or |
| 17 | did you prepare it? |
| 18 | THE DEFENDANT:  I prepared it, and I organized my |
| 19 | thoughts that way. |
| 20 | THE COURT:  Thank you. |
| 21 | When you did those things, did you know what you were |
| 22 | doing was wrong and illegal? |
| 23 | THE DEFENDANT:  Yes. |
| 24 | THE COURT:  Ms. Scolari, do you know of any valid |
| 25 | defense that would prevail at trial? |

O8DDFabP

```
 1              MS. SCOLARI:  I do not, your Honor.

 2              THE COURT:  Do you know of any other reason your

 3   client should not be permitted to plead guilty?

 4              MS. SCOLARI:  I do not.

 5              THE COURT:  Mr. Gianforti, are there any additional

 6   questions you want me to ask of the defendant?

 7              MR. GIANFORTI:  No, your Honor.

 8              I will note for the record that one of the money

 9   transfers in this case was in Manhattan, which would establish

10   venue here.

11              THE COURT:  I was going to ask you to summarize

12   government's evidence and anything else that you would like to

13   add in terms of a summary of the evidence that would be

14   presented at trial.

15              MR. GIANFORTI:  So the evidence at trial would consist

16   principally of testimony from two different cooperating

17   witnesses, some law enforcement testimony, recordings of the

18   cash and offense referenced in the underlying complaint here,

19   as well as text messages exchanged between one of the

20   cooperates and Mr. Fabio.

21              THE COURT:  Thank you very much.

22              Do both counsel agree that there's a sufficient

23   factual predicate for a guilty plea?

24              MR. GIANFORTI:  Yes.

25              MS. SCOLARI:  Yes, your Honor.
```

O8DDFabP

1          THE COURT:  Do either counsel know of any reason that

2    I should not accept the defendant's plea of guilty?

3          MR. GIANFORTI:  No, your Honor.

4          MS. SCOLARI:  No, your Honor.

5          THE COURT:  Mr. Fabio, because you've acknowledged

6    that you are, in fact, guilty as charged in the information,

7    because I am satisfied you know of your rights, including your

8    right to go to trial, and that you are aware of the

9    consequences of your plea, including the sentence which may be

10   imposed, and because I find that you are knowingly and

11   voluntarily pleading guilty, I accept your guilty plea and

12   enter a judgment of guilty on Count One of the information,

13   operation of an unlicensed money transmission business in

14   violation of 18, U.S.C., section 1960(n)(2).

15          Now, the Probation Department is going to want to

16   interview you in connection with the presentence report.  If

17   you choose to speak with the Probation Department, just, again,

18   make sure everything you say is accurate and truthful.  I'll

19   read the report very carefully, and it is important to me in

20   deciding what sentence to impose.

21          You and your counsel have a right to examine the

22   report and comment on it at the time of sentencing, so read it

23   and discuss it with your lawyer before sentencing.  If there

24   are mistakes in it, point them out.  Don't hesitate, because

25   then we can get everything fixed before it will come to my

O8DDFabP

1    attention.

2            Now, I will order that, Ms. Scolari, you be present

3    for any interview in connection with that report, unless

4    there's any reason for that not to happen.

5            MS. SCOLARI:  That's correct, I would like to be

6    present.

7            THE COURT:  Okay.  Let's set -- well, is there any

8    reason why this case cannot be put down for sentencing -- I'm

9    looking at a date of November 15 at 2:00 p.m., but is there any

10   reason why we shouldn't proceed on that kind of schedule?

11           MR. GIANFORTI:  Not from the government's perspective.

12   I'll check the exact date.

13           THE COURT:  Friday, November 15, 2:00 p.m.

14           MS. SCOLARI:  That's fine with me at this point.

15   Thank you.

16           MR. GIANFORTI:  That's fine, your Honor.  Thank you.

17           THE COURT:  Okay.  I'll direct the government to

18   provide the probation officer with its factual statement within

19   seven days.

20           Defense counsel must arrange for the defendant to be

21   interviewed by the Probation Department within the next two

22   weeks.

23           Are there any further issues, Mr. Gianforti, for us to

24   discuss?

25           MR. GIANFORTI:  No, your Honor.

O8DDFabP

1          THE COURT:  Mr. Fabio is presently on bail?

2          MR. GIANFORTI:  That's right.

3          THE COURT:  Any objection to those conditions being

4    continued?

5          MR. GIANFORTI:  No, but I believe Ms. Scolari has an

6    application in that regard.

7          THE COURT:  Okay.

8          MS. SCOLARI:  I do have a request that the Court

9    permit Mr. Fabio's travel to be extended to cover the State of

10   New Jersey.  The government has no objection.  He has very

11   close friends who are like family there, and he'd like to be

12   able to visit.

13         THE COURT:  There is no issue with that.  Would you

14   like to put in a written application?

15         MS. SCOLARI:  I can do that.

16         THE COURT:  You can put it in a letter, and then I'll

17   so order that.  That way the probation office has that.

18         MS. SCOLARI:  Thank you.

19         THE COURT:  All right.  So I think that takes care of

20   everything we need to take care of.

21         Mr. Gianforti, anything else?

22         MR. GIANFORTI:  No, your Honor.

23         THE COURT:  Ms. Scolari?

24         MS. SCOLARI:  No, your Honor.  Thank you.

25         THE COURT:  Okay.  I did have one question, and you

O8DDFabP

1    may have seen me pause in the middle of the case, but I

2    understand you mentioned that there were five cases and the

3    cases had been assigned to different judges.

4            Do you understand what the reason for that is?

5            MR. GIANFORTI:  So, your Honor, there's not an

6    overarching conspiracy I think is the issue.  So one of the

7    cooperators was a money launderer for drug dealers here in New

8    York.  He had many different flight attendants that were aiding

9    in his money laundering operation.  They were all sort of

10   separately siloed individuals.

11           Some of them knew each other.  I did charge a

12   conspiracy with respect to a couple of the other defendants in

13   this case, but ultimately each person was sort of unto

14   themselves.  There wasn't a need to consolidate them all under

15   one district judge, so they've all been wheeled out to

16   different judges.

17           THE COURT:  Okay.  I understand that.  You can

18   appreciate the reason for my question is that it seems odd to

19   have five cases that are related in certain ways, as it I think

20   seems that these five cases are --

21           MR. GIANFORTI:  Right.

22           THE COURT:  -- proceeding before five different judges

23   --

24           MR. GIANFORTI:  Right.

25           THE COURT:  -- which has the potential for lack of

O8DDFabP

1    efficiency, potential unfairness, just the differences that

2    come with five different decision makers working on the cases.

3              MR. GIANFORTI:  Sure.

4              THE COURT:  So I just wanted to get an understanding

5    of what the basis is for that.  I understand that.  So thank

6    you very much.

7              MR. GIANFORTI:  You're welcome.

8              THE COURT:  Ms. Scolari, anything else from your end?

9              MS. SCOLARI:  No, your Honor.  Thank you.  But I do

10   appreciate the Court's interest in understanding why this

11   happened.

12             THE COURT:  Okay.  Look, if there are any applications

13   along these lines for -- I guess they can be sent to any or all

14   of the judges on these cases, then you can send those

15   applications in.  I'll continue to think about this on my end

16   as well.

17             All right.  Well, thank you very much.  I really

18   appreciate it.

19             Thank you very much, Mr. Fabio.

20             Thank you to the parties.

21             We are adjourned.

22             (Adjourned)

23

24

25