LISA SCOLARI
Attorney at Law
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007
scolarilaw@gmail.com
(212) 227-8899

February 7, 2025

Hon. Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007
via ECF

Re: United States v. Jarol Fabio,
24 Cr. 481 (AS)

Your Honor:

Jarol Fabio suffered years of abuse, both physical and verbal, first at the hands of his father and then by his older brother. As a gay man of Dominican descent, he has also endured racist and homophobic treatment. Unsurprisingly he has struggled with extreme anxiety and depression but, to his credit, Jarol has eschewed his culture's rejection of psychiatric intervention and sought help in the form of therapy. Jarol's need for therapeutic help escalated in the course of several unfortunate, toxic relationships and he reached a crisis point while working as a flight attendant. His need for funds to pay for therapy led him to engage in the crime he committed in this case.

Jarol has no criminal record, is deeply remorseful for his conduct and is not someone who will ever re-offend. Despite his struggles, he has also chosen to live his life a positively as possible and, as attested by many character letters, is an unfailingly kind, compassionate and generous person. Many of the letters emphasize that his crime was inconsistent with his character and confirm his real remorse and shame We hope to convince the court that, in light of the 18 USC §3553(a) factors described below, a sentence of time served and supervised release would be is sufficient but not greater than necessary under the statute.

### Procedural background

Jarol plead guilty to operating an illegal money transfer business in violation of 18 USC §1960 pursuant to a plea agreement with the government. The agreement specifies a discretionary 18-24 month guideline range with no mandatory minimum. The pre-sentence report concurs with that range and recommends a ten months sentence. However, the PSR recommendation was made prior to the government's recommendation of a three month sentence for two other flight attendants who have been sentenced by two different judges in this district.

### Nature and Circumstance of the offense

There is no question that Jarol's conduct was serious as money transport is a necessary corollary of the drug business. He has acknowledged as much by his plea which includes a

guideline enhancement for drug proceeds. While he takes responsibility for his wrongdoing, Jarol  does not believe that he transported close to the $1.5 million reported by the government. (PSR ¶28)[1] Jarol believes that he began bringing cash to the Dominican Republic in early 2018 rather than the end of 2017. He did not work from October, 2019 to February, 2020, when he was on medical leave, or from April, 2020 through March of 2021 due to the pandemic. Before the May, 2023 trip, during which Jarol took sixty thousand dollars to the Dominican Republic, he had no contact with the source of the transported money for about a year and a half. Jarol was not caught during the May trip, and although he continued to fly to the Dominican Republic he did not seek any further opportunity to transport funds.

Jarol earned a fee when he transporting cash and used the money he received for needed therapy, for couples counseling in an ill fated relationship, and then for his own desperately needed treatment for extreme anxiety disorder. While this explains Jarol's need for money, he does not believe it excuses his conduct.

### History and Characteristics of Jarol Fabio

Jarol is a thirty-six year old naturalized citizen of Dominican descent. The presentence report accurately describes the abuse Jarol endured at the hands of his father and older brother. As detailed in the report, Jarol's father was a physically abusive bully, who beat him at the age of four when he soiled himself. (¶PSR 59) When Jarol was six his father awakened him and his older brother in the middle of the night to teach them to fight. In that instance he punched Jarol in the stomach. (¶ 60) Jarol's father used and sold drugs and after the father was deported, Jarol's older brother began bullying and assaulting Jarol. (¶ 61 and 63) In her interview with probation, Jarol's sister corroborated the fact that their elder brother physically abused Jarol. (¶68)

It is not surprising that Jarol has struggled with anxiety and depression as research  shows that significant corporal punishment harms children and results in negative outcomes such as poor mental health, lower cognitive ability, and lower self-esteem.[2]  At seventeen Jarol left home to escape his brother by living with a man, Robinson,  who was twenty-two years his senior. Unfortunately he proved to be an abusive alcoholic. It took Jarol nine years to leave Robinson, but during that time, he earned his Bachelor's degree and found employment with Delta Airlines.

---

[1] The government has not provided any documentation or substantiation of this amount in discovery. Therefore it is assumed that this is an estimate by the cooperating co-conspirator.

[2]  *See, e.g.*, Elizabeth T. Gershoff et. al., *The strength of causal evidence against physical punishment of children and its implications for parents, psychologists, and policymakers*, 73(5) AMERICAN PSYCHOLOGIST 626–638 (Jul. 2018) https://doi.org/10.1037%2Famp0000327; Liane Peña Alampay et. al., *Severity and justness do not moderate the relation between corporal punishment and negative child outcomes: A multicultural and longitudinal study*, 41(4) INTERNATIONAL JOURNAL OF BEHAVIORAL DEVELOPMENT 491–502 (Jun. 2017) https://doi.org/10.1177/0165025417697852; Joan Durrant, PhD and Ron Ensom, MSW RSW, *Physical punishment of children: lessons from 20 years of research*, 184(12) CANADIAN MEDICAL ASSOCIATION JOURNAL 1373–1377 (Sep. 2012) https://doi.org/10.1503%2Fcmaj.101314

Jarol found his dream job when Delta hired him as a flight attendant in 2015. The work enable Jarol to pursue his love of traveling and exploring different cultures. He covered several different routes, both domestic and eventually international. However, after experiencing several unpleasant racially insensitive incidents, he decided to focus on international work. He sought and obtained Spanish speaking qualification in 2017, which enabled him to travel to multiple Spanish speaking countries.

While happy at work, Jarol was having difficulty in his personal life. He has struggled with anxiety and depression during his lifetime and in 2010 he began to attend monthly free mental health counseling sessions. (¶75). In 2016 Jarol was in another relationship that he now describes as toxic, but sought to preserve it by attending expensive couples therapy. However, in October, 2019, Jarol fell to the sidewalk and began seizing. A thorough neurological evaluation failed to find a cause for his seizure and it was determined that Jarol had a stress induced extreme panic attack. (¶73) Since that time, with limited interruption, he has been in therapy in an effort to manage his anxiety disorder and depression. (¶¶ 76 and 77)

Letters submitted by psychotherapist, Diego Munoz, with whom Jarol worked from October, 2019 until February, 2023 and his current therapist, James McAllister, are attached. (Exhibits A and B) Each therapist explains the significance of Jarol's anxiety and how they increased his sessions in an effort to address it. Each independently recommends against incarceration as it will not only interrupt his ongoing treatment, but will be harmful to his mental health. Jarol's past psychotherapist, Diego Munoz wrote: "I am deeply concerned for his mental and emotional wellbeing while in detention.[T]he restrictions that he faces would ultimately deteriorate his already anxiety-laden mind and trigger possible somatic conditions, which would then lead to longer and more intense psychotherapy treatments." (Exhibit A) His current therapist, James McAllister, wrote "I am very concerned with the decline I have witnessed in his mental health since his arrest. I am even more worried ... the effects of living in a penal environment...will affect his already acute state of mental health." (Exhibit B)

Notwithstanding his mental health challenges Jarol has been an incredibly supportive and valued friend and brother. The character letters that have been submitted describe him as "kind, compassionate, overall good person...[with a] deep sense of care for others." (Letters Exhibit C) They also detail his remorse "I could sense a deep feeling of shame. It was clear to me that he understood the gravity of what he had done and that he regrets it deeply." His sister Rosabelis, echoed what others have written "his conduct in this case is a deviation from his true character and something that he would never repeat. " (PSR ¶ 68)

### The need for punishment, deterrence, and avoidance
### of unwarranted sentencing disparities

The collateral consequences of the loss of his job, the inability to find another resulting in the draining of his 401k fund, and the public humiliation have had a significant impact on Jarol. His heartfelt expressions of remorse indicate that there is no need to incarcerate him to deter him for other illegal conduct or to protect the pubic. (Jarol's letter Exhibit D) The sentences of two other flight attendants, who committed the same crimes are relevant here. In the matter of *United*

*States v. Charlie Hernandez*, 24 Cr. 447 (RA) the government recommended a three month sentence for a flight attendant who faced a 24-30 months guideline for a $121,000.00 cash transfer, but was estimated to have transported $2.5 million dollars over a five year period. In that case, Judge Ronnie Abrams imposed the requested three month sentence.

The second flight attendant's case is more analogous to Jarol's. *United States v. Sarah Valerio Pujols*, 24 Cr. 442 (NRB) Ms. Valerio also faced guidelines of 24-30 months for a $61,215 cash transfer and was estimated to have transported $1.5 million dollars over five years. Mr. Valerio was stopped when smuggling the cash in question and lied to hide the true amount she was carrying. The government agreed with Judge Naomi Rice Buchwald's determination that individual deterrence was not necessary. Despite this, the government sought the same three month sentence arguing the incarceration was necessary for "general deterrence". However, Judge Buchwald found that rather than imposing a jail sentence, which was unlikely to have any impact on the industry, the goal of general deterrence was better served with increased scrutiny of flight attendants by airport officials.  (Transcript, p. 10 Exhibit E)

### Other 18 USC §3553(a) considerations

A non-custodial sentence of supervision best advances the purposes of sentencing in this instance. 18 USC § 3553(a)(2). With respect to punishment and deterrence it is significant that Jarol has never even been arrested before. A federal felony conviction is a substantial sanction carrying life altering collateral consequences which  Jarol is already suffering. His anxiety has increased exponentially, the publicity related to his arrest, his plea and looming sentencing have made it difficult for him to find a job. *United States v. Nesbeth*, 188 F. Supp.3d 179, 182 (E.D.N.Y. 2016) ("Today, the collateral consequences of a felony conviction form a new civil death. Convicted felons now suffer restrictions in broad ranging aspects of life that touch upon economic, political, and social rights.").

Supervised release alone can be an adequate punishment because it represents a substantial restriction on an individual's liberty. *Gall v. United States*, 552 U.S. 38, 48 (2007). ("Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony.") The severity of supervised release restrictions would be increased if this Court were to impose a period of home detention as a special condition. Home detention is considered a such a serious restriction that both Congress and the Sentencing Commission have equated it with imprisonment. See 18 U.S.C. § 3563(b)(19) (home detention may be imposed as a condition of probation "only as an alternative to incarceration"); U.S.S.G. § 5C1.1 (e) (3) ("Schedule of Substitute Punishments") (If giving a non-incarceratory sentence, one day of home detention is equal to one day of imprisonment); § 5F1.2 ("Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment."); see also *United States v. Fiume*, 643 F. App'x 25, 28 (2d Cir. 2016) ("Home detention is a distinct condition that is significantly more onerous than GPS monitoring.").

A sentence of supervised release would also satisfy an additional goal of the statute "to provide the defendant with needed... medical care...in the most effective manner" as it would permit Jarol to continue his mental health treatment, through therapy, which will not be available to him in jail. 18 USC §3553(a)(2)(D).

### Conclusion

While the crime that Jarol is by no means trivial, there are multiple reasons for a non-custodial sentence in this case including the requirement that courts impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a).Therefore, the defense respectfully requests a sentence of time served and supervised release.

Respectfully,

*Lisa Scolari*

Lisa Scolari